ORIGINAL

FILED
DEC 28 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

WYANDOT NATION OF KANSAS
P.O. BOX 171755
KANSAS CITY, KANSAS 66117

Plaintiff,

CASE NO. 06-919 L

v.

UNITED STATES OF AMERICA,

Defendant.

---

## COMPLAINT

### A. INTRODUCTION

1. This is an action for money damages, with interest, against the Defendant United States of America. This case arises out of Defendant's breaches and continuing breaches of its constitutional, statutory, regulatory, treaty, common law and other legal, accounting, fiduciary and management duties owed to Plaintiff to generate, invest and manage the Plaintiff's tribal trust assets and property in the manner prescribed by applicable law.

### B. PARTIES

2. Plaintiff, WYANDOT NATION OF KANSAS (a/k/a as the Absentee Wyandots) (hereinafter "Plaintiff") is the historic Wyandot Nation that was removed by the United States from Ohio to Kansas. It is hereafter referred to as the "Wyandot Nation", the "Nation" or the "Plaintiff." The Plaintiff currently conducts its governmental and

business affairs through a General Council that has existed since time immemorial. While the Plaintiff's federal recognition was conditionally terminated by Article 1 of the Treaty of January 31, 1855, United *States-Wyandot Nation*, 10 Stat. 1159 ("1855 Treaty"), applicable federal law and the provisions of that Treaty provide that the Plaintiff shall continue to have federal acknowledgment for the purpose of executing the provisions of, and securing the benefits provided under that Treaty. This action does not involve claims or rights of the Wyandotte Tribe of Oklahoma which is a separate sovereign entity.

3. Defendant, UNITED STATES OF AMERICA, (hereinafter "United States" or "Defendant"), is a body politic existing pursuant to the Constitution of the United States of America. Defendant is the Plaintiff's trustee under federal law, and currently holds, among other "trust assets, Plaintiff's undivided interest in a two-acre cemetery called the "Huron Cemetery" in trust of the Plaintiff. Defendant is estopped from denying that it held Plaintiff's undivided interest in trust for the Plaintiff, because it held the Wyandot Tribe of Oklahoma's undivided interest in trust in the same cemetery in trust while it was conditionally terminated.

## C. JURISDICTION

4. This Court has jurisdiction over the subject matter of this action under the Tucker Act, 28 U.S.C. §1491 and the Indian Tucker Act 28 U.S.C. §1505 in that this action involves claims brought by an Indian tribe residing within the territorial limits of the United States against the United States for money damages arising under the constitution, laws, treaties and regulations of the United States, Executive Orders of the President and federal common law governing the administration and management of

property and assets held by the United States in trust for the Plaintiff. In addition thereto, this action would be cognizable in the Court of Federal Claims if the Plaintiff were not an Indian Tribe, band or group. The Court also has jurisdiction over the subject matter under the Constitution of the United States and the *American Indian Trust Fund Management Reform Act of 1994*, 25 U.S.C. §4001 et seq., which required the Defendant to provide the Plaintiff with a full and complete accounting to the earliest possible date. 25 U.S.C. § 4044.

This case also arises under the Constitution of the United States, federal common law, and treaties of the Plaintiff with the United States , including but not limited to the Treaty of January 31, 1855, *United States-Wyandot Nation*, 10 Stat. 1159 ("1855 Treaty"); the Act of March 3, 1871, ch. 120, 16 Stat. 566 as codified at 25 U.S.C. § 71; the Act of July 9, 1832, 4 Stat. 564, as codified at 25 U.S.C. § 2; and as stated and pled herein under other Congressional Acts governing the Wyandot Nation's legal relationship with the United States.

## D. STATEMENT OF FACTS

5. The Wyandot Nation entered into several treaties with the United States, the last of which is the 1855 Treaty referenced above. A portion of the Wyandot Nation was separated from the other members of the Tribe by the United States subsequent to the ratification of the 1855 Treaty and removed from Kansas to Oklahoma. These Wyandots, presently know as the "Wyandott Tribe of Oklahoma," currently occupy lands in Oklahoma and conduct their governmental and business affairs under a Constitution adopted under the 1936 Oklahoma Indian Welfare Act, 25 U.S.C. § 503. The Wyandott Nation of Kansas and the Wyandotte Tribe of Oklahoma have an

undivided trust interest in all trust property and trust funds, plus interest, that are derived from the 1855 Treaty. This includes, but is not limited to, the tribally owned lands described in Article 2 of the Treaty of 1855.

6. These Treaties brought the Tribe under the care and protection of the United States and extended the protections of the United State's Trade and Intercourse Acts to the Tribe. See Acts of: July 22, 1790, ch. 33, 1 Stat. 137; July 22; March 1, 1793, 1 stat. 329; May 19, 1796, 1 Stat. 469; March 3, 1799, ch. 46, 1 Stat. 743; March 30, 1802, 2 Stat. 139; and June 30, 1834, Ch. 161 §12 , 4 Stat. 730, 25 U.S.C. § 177.

7. Under the terms of its treaties with the United States, and under other applicable law, the Plaintiff's tribal land held in trust and the trust resources located on the Plaintiff's tribal trust lands are inalienable except as authorized by Congress, or by the terms and conditions of the Plaintiff's treaties with the United States. 25 U.S.C. § 177, The courts have found that the Non-intercourse Act, 25 U.S.C. § 177, established a trust responsibility between the United States and a tribe with respect to protection of the lands of the Tribe covered by the Non-intercourse Act, regardless of whether it is federally recognized. *Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F.2d 370,379 (1st. Cir. 1975). Congress has granted the Secretary of the Interior the authority to approve certain limited conveyances of certain interests in the Plaintiff's trust lands and trust resources, including but not limited to: leases, easements, rights of way, and resource and other land use agreements. Federal law establishes the terms and conditions under which such conveyances may be made. Federal law also generally requires that compensation be paid to the Plaintiff for the conveyance and the use of its trust lands and trust resources.

8. Pursuant to the terms of the Plaintiff's treaties with the United States, the United States agreed to deposit certain payments owed to the Plaintiff in interest bearing accounts. By various Acts of Congress, commencing with statutes adopted more than a century ago, Congress also authorized the Secretary of the Interior to collect income from tribal trust property and to deposit such trust income in the United States Treasury and other depositary institutions for the benefit of the Plaintiff. E.g., 1855 Treaty; Act of April 1, 1880, 21 Stat. 70, codified at 25 U.S.C. §161. By subsequent statutes, Congress directed that interest be paid on tribal trust funds, and required that such trust funds be invested. *See. E.g.*, Act of February 12, 1929, ch. 178 § 1, 45 Stat.1164, *codified as amended*, 25 U.S.C. §161a (1982): Act of June 24, 1938, c. 648 §1, 52 Stat. 1037 *codified as amended*, 25 U.S.C. §162, and the Act of October 4, 1984, Pub. L. 98-451, 98 Stat. 1729, *codified as amended*, 25 U.S.C. § 161a (a) (2000). Because of the enactment of these statutes the United States assumed a statutory duty which runs concurrently with its common law obligations to properly manage the Plaintiff's trust assets, monies and property.

9. As the Court found in *Chippewa Cree Tribe of the Rocky Boy Reservation v. United States*, 69 Fed. Cl. 639, (2006), and *Osage Tribe of Indians of Oklahoma v. United States*, No. 99-0550 L (Sept 21, 2006) and legislation enacted by Congress over the past century has consistently required the United States to increase the productivity of funds that it holds in trust for Indian Tribes.

10. In its treaties with Plaintiff, and subsequent Acts of Congress, Defendant has assumed control and management over the trust property and trust resources of the Plaintiff. In this capacity the Defendant has approved or allowed agreements,

easements, rights of way and other conveyances of the property and the resources which are located upon it. Defendant has also approved various third party uses and takings of said land and resources. In so doing the Defendant assumed responsibility for the collection, deposit and investment of the income generated, or which should have been generated, by such conveyances and use rights.

11. Because the United States hold and holds the Plaintiff's trust lands, trust resources, and the proceeds generated by and from the use, sale, or taking of said land and resources in trust, it has assumed the obligations of a trustee. *U.S. v. Mitchell*, 463 U.S. 206, 225 (1983); *Cobell v. Norton*, 240 F. 3d 1081 (D.C. Cir. 2001). As trustee, the United States has a fiduciary duty to the Plaintiff and an obligation to administer the trust with the greatest skill and care possessed by a trustee. The United States has charged itself with a moral obligation of the highest responsibility and trust in its conduct with Indian tribes and its conduct should therefore be judged by the most exacting fiduciary standards. *Cobell*, 240 F. 3d at 1099 (quoting *Seminole Nation v. United States*), 316. U.S. §§286, 297 (1942). This includes a duty to insure that the tribal trust property, funds and assets of the Plaintiff are protected, preserved and managed in full compliance with the Defendant's duties and applicable law.

12. The United States Court of Federal Claims has addressed the statutory obligations of the United States under 25 U.S.C. §§161a and 161b, and §162a and has consistently held the United States responsible for investing Indian trust funds in the highest yielding investment vehicles available to the funds in question. *See* Mitchell *v. U.S.* 664 F.2d 265, (Ct.Cl. 1981), Cobell *v. Norton*, 240 F. 3d 1081 (D.C. Cir 2001), *Cheyenne Arapaho Tribe of Indians of Oklahoma et al v. United States*, 512 F. 2d 1390

(March 19, 1975).

13. The trust obligation of the United States includes, among other duties, the duty to insure that tribal trust property and trust funds are protected, preserved and managed so as to insure the highest and best use of those assets and where applicable the highest revenue to the tribal owner consistent with the trust character of the property. Said duty requires the United States to further insure that the Plaintiff is afforded its full rights to compensation for any taking of trust assets as required by the Constitution of the United States and other applicable law, and that it performs and administers those duties with the greatest skill and care possessed by a trustee.

14. The Defendant, acting through its Secretary of the Interior, also has the responsibility to:

A. Provide adequate systems for accounting for and reporting trust fund balances;

B. Provide adequate controls over receipts and disbursements;

C. Provide periodic and timely reconciliations to insure the accuracy of accounts;

D. Determine accurate cash balances;

E. Prepare and supply account holders with periodic statements of their account performance and with balances of their account to be available on a daily basis;

F. Establish consistent, written policies and procedures for trust fund management and accounting;

G. Provide adequate staffing, supervision and training for trust funds management and accounting; and

H. Appropriately manage the natural resources located within the boundaries of Indian reservations and trust lands.

See 25 U.S.C. §162d et. seq.; 25 U.S.C. §4011.

15. The trust obligations of the United States include, among others, the duty to (a) exercise opportunities to obtain monetary benefits from the Plaintiff's trust land, resources and assets, (b) enter into reasonable contracts to advance those opportunities , (c) timely collect the trust funds rightly owed to the Plaintiff, (d) timely create trust accounts to hold those funds, (e) insure that the monies owed or paid for the loss or use of trust lands and trust resources are placed in those accounts in a timely manner, (f) maintain adequate records with respect to the Plaintiff's trust property, (g) maintain adequate systems and controls to guard against error or dishonesty, (h) provide regular and accurate accountings to the Plaintiff as the trust beneficiary, (i) refrain from self-dealing or benefiting from the management of the trust property, (j) insure the Federal Government's compliance with the protections afforded the Plaintiff under the Constitution of the United States, the Plaintiff's treaties and other applicable law, and (k) consult with the Plaintiff regarding the management of its trust property.

16. Through its agencies, primarily the Department of the Interior and the Department of Treasury, Defendant has undertaken and continues to undertake the responsibilities to account for, manage and otherwise act as the fiduciary trustee on behalf of the Plaintiff.

17. For at least the past several decades, Defendant's accounting for, management of, and exercise of other fiduciary responsibilities and control over Indian trust funds has been thoroughly examined and highly criticized by private entities, various government agencies, Congress and the courts. Problems identified include,

but are not limited to, the Defendant's inability to account for funds due to its loss of or failure to keep records, undue delays in making investments, and poor investment decision-making, such as investing in failed financial institutions. The Defendant's continuing widespread and well-documented Indian trust fund mismanagement, and other breaches of trust have affected and continue to affect the Plaintiff's trust assets and have caused and continue to cause monetary losses to the Plaintiff.

18. The Defendant has failed to keep records of and/ or has failed to keep proper records regarding the Plaintiff's trust accounts and assets. Defendant has never provided the Plaintiff with a full and meaningful accounting of its trust assets and trust funds. Indeed, before filing this action, the Plaintiff filed a complaint in the United States District Court demanding a full accounting of its trust accounts, trust assets and trust property. As of the date of the filing of this action, the Defendant has failed to provide that accounting or other sufficient information which would otherwise afford the Plaintiff the ability to determine whether, and to what extent, it has suffered a loss as a result of the Defendant's continual negligence, wrongdoing or other breaches of trust.

19. Complaints voiced by tribal leaders and other third parties led the Congress of the United States to undertake an investigation into Defendant's management and oversight over tribal trust accounts. E.g. *Cobell,* 204 F. 3d 1081 (D.C. Cir 2001). Congress has recognized the gross breaches of trust here complained of, as has the General Accounting Office and the Office of Management and Budget. The Office of Management Budget consistently placed the financial management of Indian trust funds as a "high risk liability" to the United States.

## E. EQUITABLE TOLLING / DELAYED ACCRUAL

20. By the Act of December 22, 1987, Pub. L. 100-202, 101 Stat. 1329, Congress imposed two requirements on the Defendant: (1) to audit and reconcile tribal trust funds and (2) to provide the Plaintiff and other tribes with an accounting of such funds. Congress reaffirmed these two mandates in subsequent statutes, namely the Act of October 22, 1989, Pub. L. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. 101-512, 104 Stat. 1915; and the Act of November 3, 1991, Pub. L. 101-154, 105 Stat. 990. By these Acts, Congress further required that the Defendant certify, through an independent party, the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds.

21. To protect the rights of tribes until the aforementioned accountings of their trust funds could be completed, Congress has included, in a series of Interior Department Appropriations Acts, language providing that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." See, Act of November 5, 1990, Pub. L. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. 104-134, 110 Stat, 1341; Act of September 30, 1996, Pub. L. 104-208; 110 Stat. 3009; Act of November 14, 1997, Pub. L. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. 105-227, 112 Stat. 2681; Act of November 29, 1999, Pub. L. 106-113, 113 Stat.

1501; Act of October 11, 2000, Pub. L. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. 107-63; Pub. L. 109-158 (December 30, 2005).

22. To satisfy the requirements of the Act of December 22, 1987, the Defendant retained the accounting firm of Arthur Andersen LLP to prepare and issue reports to the Plaintiff and federally recognized Tribes. As of the date of the filing of this Complaint, the Plaintiff has not received its Arthur Andersen Report. However, those tribes who have received their Arthur Andersen Reports have almost uniformly asserted that the reports that they received are insufficient to allow them to draw any conclusion on the accuracy of the accounting of the Tribal trust funds involved, or the acceptability of the investment management of those funds by the Defendant.

23. The Bureau of Indian Affairs has exercised management and control over the Plaintiff's tribal trust lands, resources and assets since the inception of the Plaintiff's government to government relationship with the United States. No effort to attempt to audit the Plaintiff's accounts was undertaken before Fiscal Year 1988 and no meaningful audit has been undertaken as of the date of the filing of this Complaint.

24. The deficiencies and gaps endemic to the Defendant's accounting system, have severely limited the Plaintiff's ability to determine the full extent of its losses as a result of the Defendant's breach of its fiduciary duties. Since the Plaintiff has never received an Anderson Report, this problem has not been cured by the Defendant as of the date of the filing of this Complaint.

25. To address this problem, the Plaintiff has commenced an action against the United States Secretary of the Interior, the Secretary of the Treasury and the Special Trustee for Indian Affairs, in the United States District Court for the District of Columbia,

*Wyandot Nation of Kansas v. Dirk Kempthorne, et.al.*, Case No. 1:05-CV-02491. To the extent that such an accounting to which the Plaintiff is entitled determines or otherwise reveals that the Plaintiff has one or more additional monetary claims against the Defendant, the Plaintiff seeks damages on those claims in this action. The Plaintiff will also seek the opportunity to amend this Complaint to allege those additional claims and to plead the claims already advanced herein with more specificity, at such time as the Defendant provides the Plaintiff with information which is currently in its exclusive possession and control.

26. Defendant's management and involvement with monies and properties which are, were or should have been, held in trust for the Plaintiff, dates back to the time that the Plaintiff entered into treaties with the United States. By failing to provide the Plaintiff with the Arthur Andersen Report required by the Act of December 22, 1987, Pub. L. 100-202, 101 Stat. 1329, the Defendant has shown a flagrant disregard for the Plaintiff's rights and breached its fiduciary responsibilities.

27. The Defendant fraudulently concealed the operative facts concerning the existence of the cause of action, claims and other instances of mismanagement of trust property, assets and monies, so as to prevent the Plaintiff from prosecuting or pursuing its rights to a full and complete accounting and other rights arising out of the Defendant's failures as alleged herein, including but not limited to the mismanagement of trust properties, assets, monies and other damages.

28. In furtherance of their fraudulent concealment and deception, the Defendant concocted a scheme, artifice or plan to create the false appearance of a proper management of the Plaintiff's assets and continuously, for a period of in excess of 100

years, up to and including the present time, have continued to conceal the facts which would support Plaintiff's claims, so as to delay the accrual of any cause of action otherwise arising out of the mismanagement of Plaintiff's properties, land and other trust assets.

29. Defendant has continued, up to and including the present time, to fail to render any bonafide reconciliation and accounting despite being legally obligated to provide such, so as to toll and/or render any limitations of actions, statute, regulation or other rule of law, which is premised upon the pretense of a reconciliation illegal, void and meaningless in the eyes of the law.

## F. BREACH OF FIDUCIARY DUTY

30. The Plaintiff alleges and incorporates by reference the allegations contained in paragraphs 1-29 above.

31. Defendant has breached its fiduciary duty, as described above, through its conduct and omissions stated as follows:

A. The Defendant has breached its fiduciary duty to the Plaintiff by failing to obtain the highest available rates of interest and earnings on the Plaintiff's trust funds, as required by 25 U.S.C. §§ 161, 161a and §162a.

B. The Defendant has breached its fiduciary duty to the Plaintiff by failing to deposit the Plaintiff's trust monies in interest bearing accounts in a timely manner.

C. The Defendant has breached its fiduciary duty to the Plaintiff by failing to properly invest the Plaintiffs trust monies in a timely manner.

D. The Defendant has breached its fiduciary duty to the Plaintiff by prematurely withdrawing the Plaintiff's trust funds from interest generating accounts.

E. The Defendant has breached its fiduciary duty to the Plaintiff by allowing third parties to take and/or use Plaintiff's trust property and assets without proper written agreements and proper consultation with the Plaintiff and by entering into below market rights of way and other use arrangements dealing with the Plaintiff's real property and

natural resources.

F. The Defendant has breached its fiduciary duty to the Plaintiff by generally failing to obtain the highest and best price for the use and taking of Plaintiff's trust assets.

G. The Defendant has breached its fiduciary duty to the Plaintiff by failing to collect rents, fees or other proceeds on rights of way and other similar transactions involving the Plaintiff's trust properties and/or by failing to collect and deposit those monies in interest bearing accounts in a timely manner.

H. The Defendant has breached its fiduciary duty to the Plaintiff by allowing third parties to use, remove, encumber, waste, damage, spoil and otherwise take possession of the Plaintiff's trust lands, resources and assets without consultation with the Plaintiff and/or without adequate compensation.

I. The Defendant has breached its fiduciary duty to the Plaintiff by allowing government agencies and other third parties to have the short or long term use of Plaintiffs trust properties without adequate compensation.

J. The Defendant has breached its fiduciary duty to the Plaintiff by allowing third parties to cause damage to the Plaintiff's trust properties without paying compensation to the Plaintiff.

K. The Defendant has breached its fiduciary duty to the Plaintiff by failing to properly invest and manage the Plaintiff's judgment funds, congressionally appropriated funds and other trust assets in a timely manner and in a manner which obtains the maximum investment return possible.

L. The Defendant has breached its fiduciary duty to the Plaintiff by failing to administer and manage the Plaintiff's trust lands, funds, assets and property with the greatest skill and care required of a trustee.

M. The Defendant has breached its fiduciary duty to the Plaintiff by failing to invest the Plaintiff's trust funds, which the Defendant held or holds for the Plaintiff, pursuant to the standards and obligations required by 25 U.S.C. §§161, 161a and §162 a (2000).

N. The Defendant has breached its fiduciary duty to the Plaintiff by failing to provide the consideration it agreed to provide or was required to provide in and pursuant to treaties, statutes, appropriations and other agreements involving the Plaintiff.

O. The Defendant has breached its fiduciary duty to the Plaintiff by engaging in self dealing and by converting the Plaintiff's trust assets to its own use without adequate

compensation.

P. The Defendant has breached its fiduciary duty to the Plaintiff by failing to adhere to the requirements of 25 U.S.C. §162d and other applicable federal law.

Q. The Defendant has breached its fiduciary duty to the Plaintiff by failing to pay the Tribe interest or compound interest on certain liquidated amounts and judgments. This has resulted in severe breaches of fiduciary duty including, without limitation, unconscionable consideration awards. Said payments were unconscionable because the Plaintiff was not placed in the position that they would have occupied if the Defendant had performed its duty.

**G. WHEREFORE, THE PLAINTIFF CLAIMS DAMAGES AGAINST THE UNITED STATES OF AMERICA, AS FOLLOWS:**

1. Consequential damages according to proof,
2. Incidental damages according to proof,
3. Compound interest on liquidated amount and judgment awards,
4. Pre-judgment interest,
5. Costs of the suit herein,
6. Attorneys fees, according to statute,

//

//

7. Any and all other relief and damages or relief as permitted by this Court or applicable law.

DATED THIS 19 of December, 2006.

COUNSEL OF RECORD
FOR PLAINTIFF:

Brian J. Leinbach, Esq.
California State Bar No.161739
bleinbach@elllaw.com
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Blvd, 16th Floor
Los Angeles, California 90067
Tel: (310) 552-3800
Fax: (310) 552-9434
**Attorneys for Plaintiff**

OF COUNSEL:

Walter J. Lack, Esq.
California State Bar No. 57550
wlack@elllaw.com
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Blvd, 16th Floor
Los Angeles, California 90067
Tel: (310) 552-3800
Fax: (310) 552-9434

Patricia A. Marks, Esq.
U.S. District Court Bar No. 446702
Markspattyesq@aol.com
15992 A.E. Mullinix Road
Woodbine, Maryland 21797-8440
Tel: (410) 489-4553
Fax: (301) 854-5117

Thomas V. Girardi, Esq.
California State Bar No. 36603
sfujimoto@girardikeese.com
GIRARDI & KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017-1904
Tel: (213) 977-0211
Fax: (213) 481-1554

Gregory A. Yates, Esq.
U.S. District Court Bar No. 001
California State Bar No. 63259
gyates@gregoryayates.net
16830 Ventura Boulevard, Suite 250
Encino, California 91436
Tel: (310) 858-6944
Fax: (818) 905-7038